Burnett **BARTLEY, Jr.,** Plaintiff,

v.

**VIRGIN GRAND VILLAS, Westin St. John Hotel Co., Inc., Starwood Hotels and Resorts Worldwide, Inc., Westin Vacation Management Corporation,** Defendants.

Civ. No. 2001–202.

District Court,
Virgin Islands,
St. Thomas Division.

March 18, 2002.

292

David A. Bornn, St. Thomas, U.S.V.I., for plaintiff.

Danielle C. Comeaux, St. Thomas, U.S.V.I., for defendants.

## MEMORANDUM

MOORE, District Judge.

The plaintiff, Burnett Bartley, Jr. ["Bartley" or "plaintiff"], a resident of St. John, alleges that he is the owner in fee simple of four Interval Units ["time-shares"] at Virgin Grand Villas at the Westin Resort on St. John. Taking the allegations in the complaint as true, Bartley invited Elizabeth Blaize, a black employee of the resort, and her family to stay at one of his timeshares. (*See* Complaint ¶ 10.) The defendants,[1] however, are alleged to have "declar[ed] that Elizabeth Blaize could not stay at Plaintiff's unit at Virgin Grand Villas." (*Id.* ¶ 11.) The plaintiff claims that defendant Westin Vacation Management Corporation ["Westin Vacation"] required Bartley to execute a written release for guests to stay at his property. (*Id.* ¶ 13.) According to the plaintiff, "no other fee simple property owner is required to execute such a written release," and the plaintiff further al-

---

1. The Court refers to the defendants collectively because the plaintiff does not always specify exactly which defendant engaged in each act alleged.

leges that non-black, male employees have been permitted to stay at Virgin Grand Villas. (*Id.* ¶¶ 14, 17.)

In this action, Bartley seeks damages in Count I for alleged violations of his federal civil rights under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and 42 U.S.C. § 1981; and of his local civil rights under 10 V.I.C. § 3 and 28 V.I.C. §§ 903(b), 918(j), and 927(a). He also asserts several other claims grounded in Virgin Islands law: Count II—breach of contract; Count III—intentional infliction of emotional distress; Count IV—violation of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76; Count V—inability to "freely use and enjoy his home and associate with certain individuals of his choosing" (discrimination in general); and Count VI—a claim of such vague basis that it cannot be categorized. Westin Vacation has moved to dismiss all counts for failure to state claims and for lack of jurisdiction. All other defendants have joined in Westin Vacation's motion.

## DISCUSSION

### A. Rule 12(b)(6) Standard

In considering the defendants' motion to dismiss under Rule 12(b)(6), the Court "may dismiss [the] complaint if it appears certain the plaintiff cannot prove any set of facts in support of [his] claims which would entitle [him] to relief." *See Bostic v. AT & T of the Virgin Islands,* 166 F.Supp.2d 350, 354 (D.Vi.2001) (internal quotations omitted); *see also* FED. R. CIV. P. 12(b)(6). The Court accepts as true all well-pled factual allegations, drawing all reasonable inferences in the plaintiff's favor. *Id.*

### B. Bartley's Title II Claim

The defendants' primary argument in support of their motion is that the plaintiff does not have standing to sue under 42 U.S.C. § 2000a. In opposition, Bartley attempts to assert that he himself has suffered an injury cognizable under 42 U.S.C. § 2000a. Alternatively, he claims that he has met the prudential requirements for exceptional third-party standing.

### 1. Bartley's Own Standing Under 42 U.S.C. § 2000a.

■ To satisfy the "case or controversy" standing requirement under Article III, section 2 of the U.S. Constitution,[2] the plaintiff here must establish that he has suffered a cognizable injury that is both causally related to the alleged conduct of the defendant and redressable by judicial action. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (discussing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *The Pitt News v. Fisher,* 215 F.3d 354, 359 (3d

**2.** This is not a United States district court, but it exercises the jurisdiction of an Article III court by virtue of Congress's authority over the territories under Article IV and the Revised Organic Act of 1954 § 22. *See* 48 U.S.C. § 1612 (anointing this Court with general civil jurisdiction equivalent to that of a United States district court); *see also In re Jaritz Indus.,* 151 F.3d 93, 98 (3d Cir.1998). This is because "non-fundamental" provisions of the Constitution, such as those contained in Article III, do not apply of their own force in the Territory of the Virgin Islands, and Congress has not seen fit to apply Article III to

this Court. I will nevertheless ignore this travesty and pretend that this Court is a real United States district court for purposes of this analysis. *See In re Jaritz Industries,* 207 B.R. 451, 469, 36 V.I. 225, 256 (D.VI.1997), *rev'd on other grounds,* 151 F.3d 93 (3d Cir. 1998) (noting that the special status of the District Court of the Virgin Islands presents an additional level of analysis that results in a great waste of judicial resources in determining matters such as the one arguably presented here, namely, whether Article III standing jurisprudence applies in this Court).

Cir.2000); *see also Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 282–83 (3d Cir.2002). Because the defendants' argument with respect to Bartley's standing to assert a Title II claim turns on the scope of the statute itself, I will analyze this issue in terms of whether Bartley has stated a cause of action under 42 U.S.C. § 2000a. *See Westray v. The Porthole, Inc.*, 586 F.Supp. 834, 836–37 (D.Md.1984). Having carefully reviewed the allegations in the verified complaint and all arguments in support of Bartley's claim, I conclude that the plaintiff has failed to state a claim for damages under 42 U.S.C. § 2000a.

Section 2000a provides, in relevant part:

> All persons shall be entitled to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . ., without discrimination on the ground of race, color, religion, or national origin.

42 U.S.C.2000a(a). Here, the plaintiff alleges that he was prevented from the full and equal enjoyment of his timeshare because he was not allowed to have a black woman as his guest without executing a written release. According to the defendants, in order to survive a 12(b)(6) motion to dismiss for lack of standing, Bartley must "allege that *he* was excluded from a *place of public accommodation* based on *his* race, color, creed or religion." (*See* Defs.' Mem. Supp. Mot. Dismiss at 5 (emphasis in original).)[3] Although I agree the plaintiff has no standing, it is not due to his race. Indeed, case law does suggest

that a potential litigant can have standing to sue under section 2000a when the discriminatory acts complained of, though based on the race of his companions, had the effect of denying the plaintiff the full and equal enjoyment of a public accommodation. *See, e.g., Valle v. Stengel*, 176 F.2d 697 (3d Cir.1949) (holding that whites who were refused admittance to a swimming pool because they were accompanied by blacks were "denied equal protection of the laws"); *Bobbitt v. Rage*, 19 F.Supp.2d 512, 522 (W.D.N.C.1998) (holding that a white restaurant patron had standing to sue under section 2000a when he was required to prepay for his pizza because he was with black teenagers who were required to prepay).

■ To make a viable claim, however, the plaintiff must alleged that he himself was denied access or services of the public accommodation, for that is the essence of a violation of section 2000a. If, for example, a person is allowed to enter an establishment, while his friends are excluded for discriminatory reasons, the person allowed to enter and use the establishment has not been denied full and equal enjoyment of the establishment. *See, e.g., Westray*, 586 F.Supp. at 839–40. If, on the other hand, a person is not allowed access or denied services because he is in the company of persons of a different race, that person can have standing to sue for the deprivation of his own rights under section 2000a. *See Bobbitt*, 19 F.Supp.2d at 521.

■ This is not to say that the plaintiff has stated a public accommodations claim, however. Considering all of his allega-

---

**3.** Although the allegations of the complaint would seem to suggest that Bartley asserts a "rights of association" claim, Title II does not protect "rights of association." *See, e.g., Westray*, 586 F.Supp. at 839–40 (citing legislative history to dismiss claims of whites who asserted a violation of Title II when they were

admitted to a café but their black friends were not). At best, then, Bartley alleges he himself was denied full and equal enjoyment of his own timeshare because he was not allowed to invite a black woman and her family to stay in his timeshare unit.

tions and taking them to be true, Bartley simply cannot claim that he was denied the full and equal enjoyment of his timeshare. Bartley does not allege, because he obviously cannot allege, that the defendants prevented him from staying in the unit during his timeshare period because he wanted to have a black guest. Accordingly, I must conclude that Bartley himself has not stated a claim that he suffered any injury cognizable under section 2000a.

### 2. *Jus Tertii* Standing

Bartley asserts in the alternative that he has third-party standing to assert Blaize's claims of discrimination. In general, a "litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir.1994). Under certain circumstances, however, third-party standing can be recognized. *See Campbell v. Louisiana*, 523 U.S. 392, 397–98, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998); *see also Hodel v. Irving*, 481 U.S. 704, 711, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987) (acknowledging general rule that party must assert own interests is "subject to exceptions"). For example, if discriminatory conduct "prevents a third-party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a legal entitlement," third-party standing may be appropriate. *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 720, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990); *see also Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 954–58, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (fundraiser had third-party standing to challenge statute limiting fees charitable organizations could pay because law infringed on organizations' right to hire fundraiser for a higher fee).

■ To claim third-party standing, Bartley must overcome a long tradition of judicial reluctance to entertain third-party claims by showing that the circumstances of this case warrant such an exception. Bartley must satisfy three preconditions: 1) he must suffer injury; 2) he and the third party must have a "close relationship"; and 3) the third party must face some obstacle that prevents her from pursuing her own claims. *The Pitt News*, 215 F.3d at 362; *see also Pennsylvania Psychiatric Soc'y*, 280 F.3d 278, at 289.

■ Balancing the factors of prudential restraint and the required preconditions, I find that Bartley has not established his claim to third-party standing. Assuming *arguendo* that the plaintiff has himself suffered an injury of some kind, he has not alleged the kind of "close relationship" required for the third-party standing exception. Bartley alleges only that Ms. Blaize is his "close friend." He points to nothing about this relationship to assure that he necessarily would operate "fully, or very nearly, as effective a proponent" of Blaize's rights as Blaize herself. *See Powers*, 499 U.S. at 413, 111 S.Ct. 1364 (internal quotation omitted); *see also Pitt News*, 215 F.3d at 362 ("[T]he plaintiff must have a close enough relationship with the party whose rights he or she is asserting, 'thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute' and ensuring that the plaintiff will be an effective advocate.") (quoting *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). The alleged relationship between Bartley and Blaize has none of the characteristics that typify *jus*

*tertii* standing. *See Pennsylvania Psychiatric Soc'y*, 280 F.3d 278, 288 (noting that the close relationship asserted is "typically a contractual relationship"); *id.*, 280 F.3d 278, n. 10 ("For instance, doctors may be able to assert the rights of patients; lawyers may be able to assert the rights of clients; vendors may be able to assert the rights of customers; and candidates for public office may be able to assert the rights of voters." (citations omitted)).

Furthermore, Bartley's claim of *jus tertii* standing does not meet the third requirement that Blaize must herself face some obstacle or impediment that prevents her from pursuing her own claim. Although courts do not require an " 'absolute impossibility of suit to meet the impediment exception,' " there must be something more than a " 'mere disincentive.' " *See id.* at 289, n. 14 (quoting 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 101.51[3][c] ). Plaintiff alleges no impediments that would prevent or discourage Blaize from pursuing her own claims of discrimination. Although in her brief and at oral argument, Bartley's counsel alluded to Blaize's concern for her job security, I agree with the defendants that such allusions are speculative at best. Moreover, even if stated in the complaint, such vague concerns about job security are not the kinds of "impediment" that would warrant third-party standing viewed in light of the wide variety of relief readily accessible in the Virgin Islands to aggrieved employees through the enforcement of labor, employment, and civil rights laws. *See id.* Unlike cases involving patients seeking contraception or psychiatric services, *see id.* at 288–289 (citing cases), this case does not implicate privacy concerns or concerns of social stigma.

Finally, prudential concerns counsel against granting third-party standing in this case. No claim Bartley purports to

raise on her behalf could not be addressed as well, if not better, by Blaize herself. *See Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) ("[A]ccess to the federal courts [is limited] to those litigants best suited to assert a particular claim."). Accordingly, I rule that Bartley does not have *jus tertii* standing to raise the claims he attempts to assert in this case.

**3. Other Considerations Warranting Dismissal of Title II Claim**

■ Even if I could somehow find that Bartley has standing to bring this Title II claim, he has not alleged in his complaint that his timeshare is a public accommodation. Only Bartley's counsel has argued that his timeshare is a public accommodation. This alone is reason to dismiss the plaintiff's public accommodations claim. Even if I were to allow him to amend his complaint to make this allegation, however, I find as a matter of law that Bartley's timeshare is not a public accommodation as that term is defined by the statute.

Section 2000a(b) provides:

Each of the following establishments which serves the public is a place of public accommodation within the meaning of this title ... if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence ....

42 U.S.C. § 2000a(b). The plaintiff tries to argue that his timeshare is a public accommodation because it is located on property that is also used as a hotel and

because the hotel's services and amenities are available to timeshare owners. I cannot agree.

Although the hotel, when offering lodging to transient guests, is indeed an establishment "serving the public" as defined by the statute, Bartley's timeshare is not a part of the hotel which provides lodging to transient guests. Bartley does not dispute this, as he himself alleges in his complaint that the timeshare is his private property, owned by him in fee simple absolute. (*See* Complaint ¶ 2.) A private temporary residence owned in fee simple, even one located on hotel property, is not a place providing accommodations for a "transient" guests. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2428(1993) (defining "transient" as "passing through or by a place with only a brief stay or sojourn"); *cf. United States v. Columbus Country Club*, 915 F.2d 877 (3d Cir.1990) (concluding that a person who rents the same bungalow every summer, and who intends to return to it every summer, is not a "mere transient," but rather a seasonal resident of a "dwelling" for purposes of the Federal Housing Act). Bartley is not just "passing through" his timeshare. He owns it in fee simple.

█ Finally, Bartley has asked for damages under section 2000a, even though damages clearly are not provided under Title II. *See* 42 U.S.C. § 2000a–3; *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). For all these reasons, Bartley's public accommodations claim under Title II of the Civil Rights Act of 1964 will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

4. Although Bartley does not allege his own race, even if he is white, he may avail himself of section 1981 if one of his rights as enumer-

## C. Bartley's Section 1981 Claim

Section 1981 provides, in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and *to the full and equal benefit of all laws and proceedings* for the security of persons and property as is enjoyed by white citizens . . . .

(Emphasis added.)[4] To state a claim under section 1981, a plaintiff must allege, *inter alia*, a deprivation of one of the enumerated rights. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Although it is far from clear in the complaint, Bartley's counsel states that Bartley is asserting a deprivation of his rights under the "equal benefits" part of section 1981. He argues this is the same substantive right alleged under 42 U.S.C. § 2000a, namely, that Bartley was denied the enjoyment of his timeshare when the defendants refused to allow a black woman to stay there. (Pl.'s Mem. Opp'n at 2.)

Bartley's section 1981 claim is expressly premised on his claim that his timeshare is a public accommodation, and I have already ruled it is not. Accordingly, I will grant the defendants' motion to dismiss the section 1981 claim, also with prejudice.

## D. Remaining Claims

Insofar as any remaining claims flow from an alleged violation of 42 U.S.C. § 2000a or 42 U.S.C. § 1981, they will be dismissed. As there is no reason to exercise supplemental jurisdiction over the Virgin Islands civil rights claims in Count I or the remaining counts of the complaint also asserting territorial claims, they will be dismissed without prejudice. *See* 28

ated by the statute is violated. *See Westray*, 586 F.Supp. at 838 (citing cases).

298

U.S.C. § 1367(c)(3); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 n. 10 (3d Cir.1999).

An appropriate order follows.

## ORDER

For the reasons stated in the accompanying Memorandum of even date, it is hereby

**ORDERED** that the defendants' motion to dismiss the plaintiff's discrimination claims under 42 U.S.C. §§ 1981 and 2000a is **GRANTED.** Both claims are **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that complaint is **DISMISSED.** The Clerk shall close the file.